# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | )<br>) |
|         Plaintiff, | )  Case No. 2:13-cr-00083-JCM-CWH |
| vs. | )<br>)  **Order/Report & Recommendation** |
| DERRICK PHELPS, et al., | )<br>) |
|         Defendants. | )<br>) |

      This matter was referred to the undersigned Magistrate Judge on Defendants' Joint Motion to Dismiss Indictment Due to Investigative Delay and Investigative Misconduct (#50), filed November 15, 2013; the Government's Response (#57), filed December 5, 2013; and Defendants' Reply (#58), filed December 10, 2013.[1] The matter is also referred on Defendants' Joint Motion to Compel Grand Jury Transcripts (#51), filed November 15, 2013; the Government's Response (#56), filed December 5, 2013; and Defendants' Reply (#58). The Court conducted a hearing in this matter on January 29, 2014.[2]

## BACKGROUND

      On March 6, 2013, the Grand Jury returned an Indictment charging Defendants with conspiracy to commit bank fraud, mail fraud, and wire fraud in violation of 18 U.S.C. § 1349.[3]

---

[1] Defendant Linda Mack has joined each of the motions and briefing related thereto. (#53) (#62).

[2] The hearing did not include the calling of any witnesses. The parties, through their respective counsel, presented oral argument on a series of motions then pending, including those currently under consideration. The undersigned notes his appreciation for the professionalism and preparation demonstrated by counsel during the hearing.

[3] Section 1349 provides that "[a]ny person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." Here, the underlying offenses for which the conspiracy count is charged are bank fraud, mail fraud, and wire fraud in violation of 18 U.S.C. §§ 1344, 1341, 1343.

Defendants were also charged with seven counts (identified in counts 2-8 of the Indictment) of bank fraud in violation of 18 U.S.C. § 1344. The Government also seeks forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C), 2461(c).

### A. Motion to Dismiss (#50)

#### 1. Prosecutorial Delay

Defendants seek dismissal of the indictment based on intentional delay in bringing the indictment and misconduct during the pre-indictment investigation. Defendants claim that the Government began its underlying investigation in 2008, but intentionally delayed obtaining an indictment until early 2013. During the initial stages of the investigation, Defendants allege that the Government used intimidating and threatening tactics, including the threat of retaliatory prosecution, to obtain incriminating information and statements from witnesses against Defendants. Even though these witness interviews occurred in 2008-09, the Government still waited approximately five (5) years to seek an indictment. This delay was allegedly designed to prejudice Defendants by ensuring that witnesses would either be unable to recall important facts during trial or, alternatively, assert their Fifth Amendment right against self-incrimination rather than testify and face prosecution. It was also allegedly intended to make jury selection more difficult due to the negative bias of jurors regarding criminal cases involving home mortgages. Defendants point to an email response from an individual investigating the case which states: "Realistically, [Derrick] Phelps will probably be indicted in FY 2010." *See* Ex. 2 attached to Defs' Mot. (#50).

The Government responds that it did not delay, intentionally or otherwise, in obtaining the indictment. It maintains that, on or around April 2, 2009, the United States Postal Inspection Service ("USPIS") in conjunction with the Southern Nevada Mortgage Fraud Task Force began investigating Defendants. The investigation resulted in the accumulation of over 190,000 pages of documents connected with approximately 233 allegedly fraudulent transactions. The 190,000 pages of documents includes lender files, escrow files, bank records, and loss documentation. The investigating case agent did not receive the last subpoenaed documents for review until January 4, 2013. As part of the investigation, USPIS Inspector Vicki Lenard, retired Postal Inspector and contract worker, Roberto Hernandez, and FBI agents talked with or interviewed approximately 48

witnesses beginning in 2009 and continuing into 2013. The last of these pre-indictment witness interviews was conducted on or around February 5, 2013. The most recent interview, conducted post-indictment, was in November 2013. The Government categorically denies delaying obtaining an indictment in order to gain an advantage over Defendants. To the extent there is any prejudice that results from the timing of the indictment, the Government contends it accrues equally to all parties. It further asserts that the reasons proffered in support of dismissal are simply generalized, speculative assertions insufficient to demonstrate actual prejudice. Lastly, it asserts that the decision to wait for Defendant Mack to respond to a pre-indictment offer is not prejudicial.

In reply, Defendants reject the timeline offered by the Government, asserting that the investigation started (or at least should have started ) in 2007, when law enforcement was first informed of potential criminal conduct. They contend that the documents produced show that the investigation did start in or around May 2008, not April 2009. Defendants also reject the notion that the conduct of the investigating law enforcement personnel in interviewing potential witnesses was anything other than an improper attempt to threaten or intimidate these potential witnesses with prosecution to obtain incriminating statements against Defendants. Ultimately, Defendants contend that the delay and tactical interviewing are sufficient to establish prejudice. The interview tactics will lead to witnesses asserting the Fifth Amendment while testifying to avoid threatened prosecution. The delay will ensure a tainted jury pool predisposed to negative bias regarding criminal home mortgage cases based on their own financial hardships during the time when the case should have been indicted.

### 2. Investigative Misconduct

The allegations of investigative misconduct closely mirror the allegations of intentional delay. Defendants allege that the conduct of investigators while conducting pre-indictment witness interviews and obtaining documents in furtherance of the underlying investigation was improper. Specifically, it is alleged Postal Inspectors Robert Hernandez and Vicki Lenard intimidated and pressured witnesses into either making statements against Defendants or demanding documents under the threat of prosecutorial retaliation. Defendants provide specific instances involving investigators telling witnesses they could be indicted if they did not give detailed information

during interviews and offering their own prejudicial and conclusory remarks to witnesses.

Defendants assert that the Grand Jury proceedings and testimony was "likely impacted" or "infected" by the following, allegedly intimidating tactics employed by investigators:

>   1. On May 28, 2008 Inspector Hernandez conducted an interview with Mario Gonzalez:
>
>   Hernandez: You're here right now as a witness. Don't put yourself in a position where you become a co-defendant...
>
>   Witness: Believe me that's a concern.
>
>   Hernandez: So, while the tape recorder's going, while we are in this phase of the investigation, tell me is there anything else I should know ... and specifically if you are in doubt, if you have any questions in your mind as to whether you should tell me or not, use this guide, if you think you will be embarrassed by it, you better tell me ... you may become a co-defendant, so think hard. What's your email address?[4]
>
>   2. Defendants summarize an interview on June 11, 2008 with Dominic Rogers, indicating that Inspector Hernandez said that "Mortgage fraud is a white collar crime," that the US Attorney was "clamping down" on "mortgage fraud," that he did a "background check" on Rogers, and that this was his "future." Moreover, he stated that Rogers was "young and had a lot to lose," and that "people are going to be arrested and are going to the grand jury ... and will make deals," and that "this is basically a warning." He also told Rogers that Rogers was not being entirely honest.
>
>   3. Defendants summarize an interview with Antoine Lee on December 4, 2008 in which Inspector Hernandez told Lee that he would be meeting with the Attorney General's Office and that there would be "finger pointing."
>
>   4. Defendants summarize an interview with L. Godino on June 10, 2009 in which Inspector Hernandez indicated that Defendant Phelps was being investigated for "Mortgage Fraud" and that he had learned that Phelps was "dictator" and "bully," and that "if you helped them (the Defendants) you will have issues, you will have problems," and that "you understand the implication."
>
>   5. Defendants summarize an interview with C. and T. Clark on August 27, 2009 in which C. Clark expressed concern about being recorded, and that Inspector Hernandez indicated that "mail fraud" has been committed.
>
>   6. Defendants allege that the investigators were exchanging emails with witnesses prior to the indictment being filed. Specifically, they allege that Stan Ayers provided a slide show presentation related to the Phelps, that Inspector Hernandez requested J. Cummings email him information related to property which she purchased, and that M. Glover was asked to email copies of documents in his

---

[4] Hernandez later stated: "Oh God ... I gotta tell you something. I've been doing this for thirty years. When someone starts to stumble like you. Mario, give it up or be indicted." Defendants also alleged that at the end of the interview, Hernandez instructs Gonzalez how to testify before the Grand Jury.

possession.[5]

See Defs' Mot. (#50) at 4:10 - 7:25.

In response, the Government notes that the request to dismiss is based upon investigative misconduct, not prosecutorial misconduct. The Government acknowledges the interview tactics used by investigators, but argues that the techniques are common law enforcement techniques used in order to persuade interviewees to be truthful. The Government contends that none of the techniques is contrary to statutory or constitutional law. The Government rejects the notion that Court may exercise its supervisory authority to preserve judicial integrity for conduct that occurred outside the courtroom. Lastly, the Government maintains that there is no order that can be entered to deter future misconduct because none of the conduct was illegal or improper.

In reply, Defendants concede that they are not alleging direct prosecutorial misconduct, but seeking dismissal for investigative misconduct pursuant to *Aguilar v. Woodford*, —F.3d—, 2013 WL 3870727 *13 (9th Cir.), contending that such misconduct can be imputed to the prosecution. Defendants reiterate their position that the interview techniques went well beyond standard investigative conduct and were, in fact, improperly coercive.

**B. Motion to Compel Grand Jury Transcripts (#51)**

Defendants' motion to compel grand jury transcripts is premised on the allegedly improper interview techniques used during the investigation. Defendants specifically incorporate the arguments made in their motion to dismiss (#50), and request the grand jury transcripts due to the threatening, intimidating, and coercive interview tactics employed by the investigators in this matter prior to indictment. Such disclosure will, Defendants argue, provide further information regarding the alleged investigative misconduct.

The Government responds that the Defendants have not met their heavy burden to show they are entitled to the grand jury transcripts. It disagrees that the investigative techniques were coercive. It further notes that it will provide relevant grand jury testimony as required under 18 U.S.C. § 3500(b), Fed. R. Crim. P. 26.2(a), and the parties' joint discovery agreement. It disagrees

---

[5] The Court was not provided with details beyond what is described here.

that the grand jury transcripts should be disclosed in any fashion other than as contemplated by rules and discovery agreement.[6]

In reply, Defendants argue that the Government should not be permitted to minimize the nature of the investigative tactics used and should be compelled to disclose the grand jury transcripts.

## ANALYSIS

### A. Motion to Dismiss (#50)

Defendants' request that the indictment be dismissed because the Government: (1) unreasonably delayed in bringing the indictment, and (2) engaged in investigative misconduct prior to seeking an indictment. The Court will address each claim in turn.

#### 1. Delay

"The Fifth Amendment guarantees that defendants will not be denied due process as a result of excessive pre-indictment delay." *United States v. Corona-Verbera*, 509 F.3d 1105, 1112 (9th Cir. 2007) (citing *United States v. Sherlock*, 962 F.2d 1349, 1353 (9th Cir. 1989). "Generally, any delay between the commission of a crime and an indictment is limited by the statute of limitations." *Corona-Verbera*, 509 F.3d at 1112 (citation omitted). "In some circumstances, however, 'the Due Process Clause requires dismissal of an indictment brought within the [statute of] limitations period.'" *Id.* Courts apply a two-part test to determine whether pre-indictment delay resulted in the denial of due process: (1) the defendant must prove actual, non-speculative prejudice from the delay, and (2) the length of the delay, when balanced against the reasons for it, must offend those "those fundamental conceptions of justice which lie at the base of our civil and political institutions." *United States v. Huntley*, 976 F.2d 1287, 1290 (9th Cir. 1992) (citing *United States v. Lovasco*, 431 U.S. 783, 790 (1977). A defendant must satisfy both prongs, but "[t]he second prong of the applies only if [the defendant] has demonstrated actual prejudice." *Corona-Verbera*, 509 F.3d at 1112 (citation omitted).

---

[6] The Government has agreed to provide defense counsel with grand jury transcripts of testimony offered by witnesses it intends to call at trial ten days before trial.

### i. Actual Prejudice

Defendants must first prove that the pre-indictment delay resulted in actual, non-speculative prejudice. The Ninth Circuit "has found the burden of showing actual prejudice is heavy and is rarely met." *See e.g. United States v. Gilbert*, 266 F.3d 1180, 1187 (9th Cir. 2001) (internal quotation marks and citations omitted); *see also Sherlock*, 962 F.2d at 1354; *Huntley*, 976 F.2d at 1290. Defendants contend that they have suffered prejudice in two ways: (1) witnesses who have been intimidated and threatened with prosecution will presumably assert their Fifth Amendment rights against self-incrimination, thus hindering the presentation of testimony favorable to the defendants, and (2) potential jurors will be harder to select due to their negative bias regarding criminal cases involving home mortgages.

Defendants candidly concede that this basis of prejudice is somewhat premature. The Court agrees. At this stage, the supposed prejudice does not rise above the level of generalized assertions. "Generalized assertions of the loss of memory, witnesses, or evidence are insufficient to establish actual prejudice." *E.g. United States v. Manning*, 56 F.3d 1188, 1194 (9th Cir. Cal. 1995). Defendants have not identified any witness who might assert his or her Fifth Amendment rights. To the extent they believe those individuals interviewed prior to the indictment will be forced to invoke their Fifth Amendment rights against self-incrimination rather than provide testimony, the claims are speculative. The Court notes that it is not uncommon for witnesses at trial to invoke their Fifth Amendment rights against self-incrimination. The Court also notes that any deal or agreement for immunity in exchange for testimony must necessarily be disclosed under *United States v. Bagley*, 473 U.S. 667, 676 (1985) (holding that the duty to disclose evidence encompasses impeachment evidence as well as exculpatory evidence). The deliberate or inadvertent non-disclosure of evidence showing that prosecution witnesses were granted immunity in exchange for testimony violates a defendant's due process rights if it is prejudical. *E.g. Giglio v. United States*, 405 U.S. 150, 154 (1972). Even assuming witnesses may invoke their Fifth Amendment rights against self-incrimination, Defendants must show both that lost testimony, witnesses, or evidence meaningfully has impaired their ability to defend themselves, and the proof must demonstrate by definite and non-speculative evidence how the loss of a witness or evidence is prejudicial to their

case. *Corona-Verbera*, 509 F.3d at 1112. All that has been made here is the speculative claim that the potential invocation by unidentified witnesses of their Fifth Amendment rights will be prejudicial. This allegation, without more, is insufficient to show actual prejudice. *See Gilbert*, 266 F.3d at 1187 ("A simple allegation that testimony was lost is not enough.").

The Court is not persuaded by the suggestion that the delay in bringing the indictment is prejudicial because potential jurors will be biased because of the nature of the crimes charged. The claim is entirely speculative. Even if the undersigned were inclined to believe that jurors would be biased because of the 2008 financial collapse (which it is not), that bias would ostensibly lessen, not increase, as time passed. It is mere speculation that the anticipated difficulty of selecting such a jury is different now than it would have been two or three years ago, or that an appropriate jury cannot now be selected. Given the requirement that allegations of prejudice "be supported by non-speculative proof," *Corona-Verbera*, 509 F.3d at 1113, the Court finds this rationale unpersuasive. Lastly, the Court rejects the claim that Defendants have suffered prejudice because some of the files from the 233 transactions underlying the conspiracy charge were no longer available due to institutions no longer being in business or because the files were destroyed. Defendants have not provided any example or made a non-generalized, non-speculative showing that any documents to support this claim. Thus, the Court finds it insufficient to demonstrate actual prejudice.

### ii. Reason for the delay

In order to invoke analysis under the second prong of the two-part test for pre-indictment delay rising to a due process violation, Defendants must satisfy the first prong. Having failed to do so, the Court need not analyze the claims under second prong. Nevertheless, even assuming actual prejudice, the Court has little difficulty finding that the delay did not offend those "fundamental conceptions of justice which lie at the base of our civil and political institutions." *See Corona-Verbera*, 509 F.3d at 1112 (citation omitted). As succinctly stated in *Lovasco*, "the Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment. Judges are not free, in defining due process to impose on law enforcement officials our personal and private notions of fairness and to

disregard the limits that bind judges in their judicial function." 431 U.S. at 790 (internal quotations and citations omitted). So long as delay is not undertaken solely "to gain tactical advantage of the accused," the Court will generally defer to the decision of the prosecutor. *C.f. Sherlock*, 962 F.2d at 1354-55 (citations omitted); *see also United States v. Pino*, 708 F.2d 523, 527 (10th Cir. 1983) (applying the *Lavasco* framework, the Tenth Circuit stated that "[t]he rights of a defendant under the due process clause of the Fifth Amendment are not violated in the absence of a showing . . . that the delay was purposefully designed to gain a tactical advantage or to harness the defendants.") (citations omitted).

The undersigned is satisfied that, assuming a demonstration of actual prejudice, the reasons proffered for the delay are sufficient. The Government has set forth a record of investigative efforts involving interactions with 48 witnesses, identifying hundreds of transactions, and compiling thousands of pages of documents over several years. Even accepting Defendants' contention that the investigation began as early as 2008, they provide no facts to support their argument that the delay was purposefully designed to gain a tactical advantage or for the purpose of harassment. Under the circumstances, and absent proof of such allegations, the court cannot say that the delay within the statute of limitations, and not for tactical advantage, was so unreasonable as to violate the Due Process Clause.

### 2. Investigative Misconduct

The Ninth Circuit has held that dismissal of an indictment is inappropriate absent "flagrant" and "substan[tially] prejudic[ial]" misconduct. *United States v. Jacobs*, 855 F.2d 652, 655 (9th Cir. 1988).[7] The adage that "[t]he Court's power to dismiss an indictment on the ground of prosecutorial misconduct is frequently discussed but rarely invoked[,]" remains true. *See United States v. Samango*, 607 F.2d 877, 881 (9th Cir. 1979). Generally, courts will not interfere with prosecutorial discretion unless the abuse is so flagrant and prejudicial that it violates due process.

---

[7] Defendants claim no misconduct by the prosecutors in this case, but rely upon Aguilar v. Woodford, __F3d __, 2013 WL 3870727, at *13 (9th Cir. 2013) for the proposition that the conduct of the criminal investigator is imputed to the prosecutor. The government did not resist this proposition. Although Aguilar is a case involving the disclosure of *Brady* material, for the purposes of this motion, the court will analyze alleged investigator misconduct to be attributable to the government under the auspices of prosecutorial misconduct.

*Id*. Notably, even in cases involving prosecutorial misconduct which is neither flagrant nor prejudicial, a judge can still sanction the misconduct as long as the chosen sanction is proportionate to the misconduct. *See e.g. United States v. Cadet*, 727 F.2d 1453, 1470 (9th Cir. 1984); *see also United States v. Chapman*, 524 F.3d 1073, 1084 (9th Cir. 2008). In *Chapman*, the Ninth Circuit identified two available theories under which an indictment can be dismissed as a result of prosecutorial misconduct: (1) the government's conduct is so extreme and outrageous that it constitutes due process violation, or (2) under its supervisory powers, a court is empowered to act "to implement a remedy for the violation of a recognized statutory or constitutional right; to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and to deter future illegal conduct. 524 F.3d at 1084.

### i. Violation of a recognized statutory or constitutional right

Dismissal is appropriate when a federal constitutional or statutory right has been violated and no lesser remedial action is available. *United States v. Barrera-Moreno*, 951 F.2d 1089, 1092 (9th Cir. 1991). There is no suggestion that the conduct of investigators during the pre-indictment interviews violated statutory or constitutional law. In *United States v. Simpson*, 927 F.2d 1088, 1090 (9th Cir. 1991) *abrogated on other grounds*, *see United States v. W.R. Grace*, 526 F.3d 499, 511 n.9 (9th Cir. 2008) (recognizing abrogation), the Ninth Circuit found that although the government's conduct was sleazy, there was no violation of any statutory or constitutional right that formed the basis of its exercise of its supervisory power. 927 F.2d at 1090.[8] "The supervisory power simply does not give the courts the authority to make up the rules as they go, imposing limits on the executive according to whim or will." *Id*. (citation omitted).

Here, Defendants primary argument is that the interview tactics used by investigators prior to indictment in this matter were improper. They contend that investigators, through intimidation

---

[8] In *Simpson*, the FBI used a prostitute, heroin user and known fugitive as an informant against Simpson. *Id*. at 1089. The informant developed an emotional and sexual relationship with Simpson. *Id*. Throughout the investigation and while on the FBI payroll, the informant engaged in prostitution, heroin use and shoplifting. *Id*. "In addition, the FBI allowed [the informant] to keep $10,000 profit from one of the heroin sales she arranged." *Id*. The Ninth Circuit reversed the district court's dismissal, "holding that the government's behavior was not so outrageous as to violate the Constitution." *Id*.

and coercion, pressured witnesses to give incriminating statements and produce documents and other items in order to further their investigation. The undersigned has reviewed the summarized statements provided by Defendants and finds there was no inappropriate pressure, intimidation, or coercion being applied by investigators. The Ninth Circuit has acknowledged that law enforcement commonly engage in similar tactics when conducting interviews: "[T]rickery is not automatically coercion. Indeed, the police commonly engage in such ruses as suggesting to a suspect that a confederate has just confessed or that police have or will secure physical evidence against the suspect." *United States v. Crawford*, 372 F.3d 1048, 1061 (9th Cir. 2004); s*ee also Frazier v. Cupp*, 394 U.S. 731, 737-739 (1969) (holding that confession was voluntary even though the officer falsely told the suspect that his co-conspirator had confessed to the crime); *United States v. Orso*, 266 F.3d 1030, 1039 (9th Cir. 2001) (en banc) (holding that an inspector's misrepresentation that a piece of evidence existed, while reprehensible, does not constitute coercive conduct); *Clanton v. Cooper*, 129 F.3d 1147, 1158 (10th Cir. 1997) (holding that a confession was voluntary despite the fact that an officer falsely told the defendant that physical evidence connected him to the crime). Insisting that witnesses tell the truth, or warning a witness that a false statement to a federal law enforcement agent carries a criminal penalty, is not inappropriate. Consequently, there being no demonstrated statutory or constitutional violation, the undersigned is not inclined to recommend substituting a "judicial wag-of-the-finger for the prosecutorial nod." *Id*. at 1091.

### ii. Preservation of Judicial Integrity

Courts may also exercise the supervisory power "to preserve judicial integrity" by ensuring that a jury's decision rests on "appropriate considerations validly before [it]." *United States v. Hasting*, 461 U.S. 499, 505 (U.S. 1983). Judges exercise substantial discretion over what happens inside the courtroom. However, as stated in *Simpson*, "[t]he supervisory power comprehends authority for the courts to supervise their own affairs, not the affairs of the other branches; rarely, if ever, will judicial integrity be threatened by conduct outside the courtroom that does not violate a federal statute, the Constitution or a procedural rule. *Simpson*, 927 F.2d at 1091. Here, the undersigned agrees with the Government that the conduct complained of occurred outside the courtroom and, therefore, the preservation of judicial integrity is not proper ground for dismissal.

### iii. Deter future illegal conduct

"The supervisory power may also be used to create remedies designed to deter future illegal conduct." *Simpson*, 927 F.2d at 1091.  If there is no past illegal conduct for which the government is responsible, there supervisory authority cannot be used to deter the government from future misconduct.  *Id*.  Here, Defendants have not shown that the investigators violated any statutory, constitution, or other rule during the course of the interviews in question.  Thus, there being no prior illegal conduct, there is no future illegal conduct to deter.

### B. Motion to Compel Grand Jury Transcript (#51)

Defendants' motion to compel grand jury transcripts flows from the facts underlying the motion to dismiss.  It is premised on the proposition that the interview techniques used during the pre-indictment investigation were so improper that disclosure of the grand jury transcripts is necessary to determine whether such conduct continued before the Grand Jury.  "The court may authorize disclosure–at a time, in a manner, and subject to any other conditions that it directs–of a grand-jury matter ... at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter before the grand jury."  *See* Fed. R. Crim. P. 6(e)(3)(E), (e)(3)(E)(ii).  "A party seeking disclosure of the grand jury transcripts must demonstrate a 'particularized need' for the disclosure."  *United States v. Perez*, 67 F.3d 1371, 1381 (9th Cir. 1995) (citations omitted).  "The standards the trial court should apply in granting disclosure of the grand jury transcripts are '(1) that the desired material will avoid a possible injustice, (2) that the need for disclosure is greater than the need for continued secrecy, and (3) that only the relevant parts of the transcripts should be disclosed."  *Id*. (quotations and citations omitted).  A speculative claim does not meet the particularized-need standard.  *E.g. United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986).  There must be some evidence adduced to support the request for disclosure.

Defendants have not met their burden to show that the grand jury transcripts should be released.  The request is premised entirely on the position, as set forth and rejected above, that investigators committed misconduct during pre-indictment interviews of witnesses.  Having determined that the investigators did not engage in misconduct, the undersigned finds that there is no particularized need justifying release of the grand jury transcript.  As noted in the briefing,

portions of the grand jury proceedings will need to be disclosed at a later date pursuant to 18 U.S.C. § 3500(b), Fed. R. Crim. P. 26.2(a), and the parties' joint discovery agreement. The Court, however, will not order complete disclosure at this time.

Based on the foregoing and good cause appearing therefore,

**IT IS HEREBY ORDERED** that Defendants' Joint Motion to Compel Grand Jury Transcripts (#51) is **denied**.

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Defendants' Joint Motion to Dismiss Indictment Due to Investigative Delay and Investigative Misconduct (#50) be **denied**.

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED: March 18, 2014.

_____
**C.W. Hoffman, Jr.**
**United States Magistrate Judge**