1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

8    | UNITED STATES OF AMERICA,           2:13-CR-83 JCM (CWH)

9    |             Plaintiff(s),

10   | v.

11   | DERRICK PHELPS, CYNTHIA
12   | PHELPS, and LINDA MACK,

13   |             Defendant(s).

14

15                                **ORDER**

16       Presently before the court are defendant's objections to Magistrate Judge Hoffman's reports

17   and recommendations, (doc. # 75, 76), in response to defendant's[1]: (1) motion to dismiss the

18   indictment due to investigative misconduct and delay, (doc. # 50) and (2) motion to dismiss count

19   one of the indictment as time barred under the statute of limitations, (doc. # 49).[2]

20   **I.     Background**

21       On March 6, 2013, the grand jury indicted the defendant, charging her in count one with

22   conspiracy to commit bank fraud, mail fraud, and wire fraud in violation of 18 U.S.C. section 1349.

23

24       [1] Co-defendants Derrick and Cynthia Phelps filed the underlying motions, to which defendant Linda Mack
     joined. The Phelps defendants have since entered guilty pleas. (Docs. # 93, 94). Accordingly, the court analyzes these
25   motions with respect to defendant Mack only.

26       [2] The defendant also challenges the magistrate judge's order denying her motion to compel the production of
27   grand jury transcripts. Because the magistrate judge is authorized to make a final ruling on a motion to compel, the issue
     is not properly before this court. If the defendant desires to challenge that ruling, she must do so by filing a separate
28   motion to reconsider. *See* special order 109(III)(F)(4).

James C. Mahan
U.S. District Judge

1    The government alleges that from in or about January 2003, to in or about November 2006, the

2    defendant, through approximately "233 transactions with a combined purchase price in excess of

3    $83,000,000.00," participated in a conspiracy to obtain mortgage loans from lenders by "causing

4    materially false information to be placed in the buyers' mortgage loan applications and supporting

5    documentation[,] causing money from the mortgage loans to be disbursed to [the] defendant's own

6    use and benefit." (Doc. # 76).

7    **II.    Legal Standard**

8         This court "may accept, reject, or modify, in whole or in part, the findings or

9    recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). Where a party timely objects

10   to a magistrate judge's report and recommendation, then the court is required to "make a de novo

11   determination of those portions of the [report and recommendation] to which objection is made."

12   28 U.S.C. § 636(b)(1).

13   **III.   Discussion**

14        **A.    Investigative Misconduct**

15        There are two available theories under which an indictment can be dismissed as a result of

16   prosecutorial misconduct: (1) when the government's conduct is so extreme and outrageous that it

17   constitutes a due process violation and (2) under the court's supervisory powers. *United States v.*

18   *Chapman*, 524 F.3d 1073, 1084 (9th Cir. 2008).

19        In the court's supervisory role, there are three legitimate bases for the exercise of the

20   supervisory power over prosecutorial discretion: (1) to implement a remedy for the violation of a

21   recognized statutory or constitutional right; (2) to preserve judicial integrity by ensuring that a

22   conviction rests on appropriate considerations validly before a jury; and (3) to deter future illegal

23   conduct. *Id.* at 1085 (quoting *United States v. Simpson*, 927 F.2d 1088, 1090 (9th Cir. 1991)).

24   Dismissal of an indictment is proper only when there is "flagrant" and "substantially prejudicial"

25   misconduct. *United States v. Jacobs*, 855 F.2d 652, 655 (9th Cir. 1988). Furthermore, "the court's

26   power to dismiss an indictment on the grounds of prosecutorial misconduct is frequently discussed

27   but rarely invoked." *United States v. Samango*, 607 F.2d 877, 881 (9th Cir. 1979).

28

**James C. Mahan**
**U.S. District Judge**

- 2 -

1    In the instant case, without pointing to any constitutional or statutory right, the defendant

2  argues that "to preserve judicial integrity" the case must be dismissed based on investigators'

3  improper use of intimidating and coercive interview tactics. The defendants allege that investigators

4  pressured and intimated witnesses under threats of prosecutorial retaliation during pre-indictment

5  investigation, specifically when conducting interviews of witnesses and obtaining documents. (Doc.

6  # 75).

7    A statement is involuntary if it is "extracted by any sort of threats or violence, [or] obtained

8  by any direct or implied promises, however slight, [or] by the exertion of any improper influence."

9  *Hutto v. Ross*, 429 U.S. 28, 30 (1976) (quoting *Bram v. United States*, 168 U.S. 532, 542–43 (1897));

10  *See also United States v. Crawford*, 372 F.3d 1048, 1060 (9th Cir. 2004); *United States v. Haswood*,

11  350 F.3d 1024, 1027 (9th Cir. 2003) (holding that a "confession is involuntary if coerced either by

12  physical intimidation or psychological pressure"). Furthermore, "a promise of leniency accompanied

13  by threats or other coercive practices constitutes improper influence and makes a subsequent

14  inculpatory statement involuntary." *United States v. Tingle*, 658 F.2d 1332, 1336 (9th Cir.1981) (the

15  defendant's confession was involuntary when it was induced by an interrogating officer who accused

16  the defendant of lying, recited the maximum penalties of crimes that could be charged, threatened

17  the defendant that she might not see her two-year-old child if she went to prison, and promised the

18  defendant that the agent would inform the prosecutor if she cooperated or refused to cooperate).

19    However, this broadly-stated rule has not been applied to invalidate, per se, all statements

20  made by a suspect in response to a promise made by law enforcement personnel. The promise must

21  be sufficiently compelling to overbear the suspect's will in light of all attendant circumstances. *Leon

22  Guerrero*, 847 F.2d at 1366; *Hutto*, 429 U.S. at 30. In determining whether a defendant's confession

23  was voluntary, the question is "whether the defendant's will was overborne at the time he confessed."

24  *Clark v. Murphy*, 331 F.3d 1062, 1072 (9th Cir. 2003), cert. denied, 540 U.S. 968 (2003) (quoting

25  *Haynes v. Washington*, 373 U.S. 503, 513 (1963)). Moreover, psychological coercion does not

26  invoke a per se rule and "[the court] must consider the totality of the circumstances involved and

27  their effect upon the will of the defendant." *United States v. Miller*, 984 F.2d 1028, 1030-31 (9th Cir.

28

**James C. Mahan**
**U.S. District Judge**

- 3 -

1  1993) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226–27, 93 S.Ct. 2041, 36 L.Ed.2d 854
2  (1973)).

3      Specifically, "an interviewing agent's suggestion that a suspect's cooperation with the
4  government will have a positive effect on the suspect's possible sentence is not an improper
5  inducement that causes the suspect's later testimony for the government to be involuntary." *United*
6  *States v. Leon Guerrero*, 847 F.2d 1363, 1366 (9th Cir. 1988); *Williams v. Woodford*, 384 F.3d 567,
7  594-95 (9th Cir. 2004) (finding that statements by the police implying that suspect would not receive
8  jail time on his drug charge so long as he testified against defendant, did not render trial testimony
9  against defendant involuntary); *see also United States v. Moody*, 778 F.2d 1380, 1384–85 (9th Cir.
10  1985) (witness testimony provided pursuant to a plea agreement was not involuntary or coerced).
11  This applies even when a promise to inform the government about a suspect's cooperation is
12  accompanied by a promise to recommend leniency or by speculation that cooperation will have a
13  positive effect. *United States v. Leon Guerrero*, 847 F.2d 1363, 1366 (9th Cir. 1988); *see United*
14  *States v. Brandon*, 633 F.2d 773, 777 (9th Cir. 1980); *United States v. Glasgow*, 451 F.2d 557, 558
15  (9th Cir. 1971); *Fernandez–Delgado v. United States*, 368 F.2d 34, 35–36 (9th Cir. 1966).

16      In examining the record, none of the statements made by investigators are sufficient to
17  jeopardize having the "conviction rest[] on appropriate considerations, validly before a jury," or to
18  otherwise constitute coercion. The investigators did suggest that suspects may "become co-
19  defendant[s]," would be indicted if they did not cooperate, should be concerned about their future,
20  that helping defendants would cause "problems," and encouraged them to "make [a] deal[]" with the
21  government. (Doc. # 50). However, there are no threats of violence, implied or direct promises, or
22  promises of leniency accompanied by threats. Therefore, the magistrate judge was correct in finding
23  there was no investigative misconduct.

24      **B.   Investigative Delay**

25      To succeed on a claim of pre-indictment delay based on denial of due process, the defendant
26  must satisfy a two prong test, showing that (1) actual, non-speculative prejudice resulted from the
27  delay, and (2) the length of the delay, weighted against the reasons for the delay, "offends

28

James C. Mahan
U.S. District Judge

- 4 -

1   fundamental concepts of justice which are the base of our civil and political institutions." *United*

2   *States v. Corona-Verbera*, 509 F.3d 1005, 1112 (9th Cir. 2007).

3        The defendant speculates, without support, that witnesses will not testify and that potential

4   jurors will be more difficult to select because of a negative bias against defendants in criminal cases

5   regarding home mortgages. Both of these assertions are premature and insufficiently specific to

6   constitute "actual, non-speculative prejudice." *See, e.g., United States v. Gilbert*, 266 F.3d 1180,

7   1187 (9th Cir. 2001) ("[B]urden of showing actual prejudice is heavy and rarely met."); *United*

8   *States v. Manning*, 56 F.3d 1188, 1194 (9th Cir. 1995) ("Generalized assertions of the loss of

9   memory, witnesses, or evidence are insufficient to establish actual prejudice."). Therefore, the

10   magistrate judge was correct in denying the defendant's claim of investigative delay as no actual

11   prejudice exists.

12        **C.**    **Conspiracy and Statute of Limitations**

13        "[S]tatutes [that] limit[] how much time the government has to indict an alleged violator once

14   a conspiracy is complete, . . . [do] not limit the temporal scope of a conspiracy for which a violator

15   is liable." *Flintkote Co. v. United States*, 7 F.3d 870, 873 (9th Cir. 1993). Therefore so "long as some

16   part of the conspiracy [occurred within the statute of limitations] preceding the indictment, the

17   statute of limitations [should] not insulate from criminal liability." *Flintkote Co.*, F.3d at 873; *see*

18   *United States v. Walker*, 653 F.2d 1343, 1347 (9th Cir. 1981), cert. denied, 455 U.S. 908 (1982);

19   *United States v. Inryco, Inc.*, 642 F.2d 290, 293 (9th Cir. 1981), cert. dismissed, 454 U.S. 1167

20   (1982).

21        The parties agree that the conspiracy ended in November 2009, that some of the entities

22   involved in the alleged illegal transactions at the time were not defined as "financial institutions,"

23   and that these entities were subject to a shorter, five-year statute of limitations. However, the

24   defendant objects to the recommendation of the magistrate judge on the grounds that the first count

25   of the indictment, alleging conspiracy to commit fraud, is (at least in part) barred by the statute of

26   limitations.

27

28

**James C. Mahan**
**U.S. District Judge**

1    Title 18 U.S.C. 3293(2) was amended in 2009 to include mortgage lending businesses as

2    financial institutions, thereby increasing the statute of limitations for fraud against such businesses

3    from five years to ten years. The defendant argues that allowing the government to maintain all 233

4    transactions would constitute a retroactive application of the new definition in violation of the ex

5    post facto clause of the Constitution because a "non-financial institution identified during the alleged

6    conspiracy [cannot] serve as a basis for a charge of [c]onspiracy to [c]ommit [b]ank [f]raud or

7    substantive [b]ank [f]raud." *Id.* The defendant concedes that the government would be able to

8    prosecute some of the transactions in count one, so long as they were with FDIC insured lenders, but

9    argues that the government must be required to "resubmit the instant matter to the grand jury, as they

10   tainted the presentation with inadmissible and time barred evidence." *Id.*

11   However, because conspiracy does not require that all conduct undergone in furtherance of

12   the conspiracy fall within the applicable statute of limitations, the defendant's arguments fail. It is

13   undisputed that some of the 233 properties referred to in the first count fall within the statute of

14   limitations and therefore the magistrate judge was correct in refusing to make a summary disposition

15   of the entire count based on a portion of the evidence. The magistrate judge was also correct in his

16   conclusion that whether the defendant's conduct "affected a financial institution [under section

17   3293(2)]," is an issue "directly intermeshed with questions going to a material element of the charge,

18   and therefore, falls 'within the province of the ultimate finder of fact and must be deferred.'" (Doc.

19   # 76, p. 6).

20   **IV.    Conclusion**

21   The magistrate judge was correct in determining that there was no evidence of investigative

22   misconduct or investigate delay. The investigators engaged in proper interview tactics, well within

23   their discretion, and brought the indictment in a timely manner without prejudicing the defendant.

24   Furthermore, the magistrate judge was correct in determining that the conspiracy charge

25   should not be dismissed based on its inclusion of some transactions which fall outside of the statute

26   of limitations.

27   . . .

28

**James C. Mahan**
**U.S. District Judge**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the magistrate judge's reports and recommendations (docs. # 75, 76) be, and the same hereby are, ADOPTED in their entireties.

IT IS FURTHER ORDERED that the defendant's motion to dismiss count one (doc. # 49) and motion to dismiss the indictment (doc. # 50) be, and the same hereby are, DENIED.

DATED July 7, 2014.

_____

**UNITED STATES DISTRICT JUDGE**

James C. Mahan
U.S. District Judge

- 7 -